UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ENTHONE INC.,

                                Plaintiff,

      v.                                                        1:15-cv-233 (TJM/RFT)

BASF CORPORATION,

                                Defendant.
_____

**THOMAS J. McAVOY,**
**Senior United States District Judge**

# DECISION & ORDER

## I. INTRODUCTION

      Plaintiff Enthone Inc. ("Enthone") commenced this action alleging direct and indirect patent infringement against Defendant BASF Corporation ("BASF") under 35 U.S.C. § 271. BASF moves to dismiss Enthone's indirect patent infringement claims pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. No. 15. Enthone has opposed the motion, and BASF has replied. Dkt. Nos. 17, 19. The Court has considered the parties' submissions and, for the reasons that follow, BASF's motion is granted in part and denied in part.

## II. BACKGROUND

      Enthone is a corporation that, among other things, manufactures and sells chemicals. Compl. at ¶¶ 1, 11. Some of those chemicals are used in the manufacture of microelectronics, specifically the electrolytic plating of copper onto semiconductor substrates. *Id.* at ¶¶ 11, 12. In 2007 and 2010, the United States Patent and Trademark Office issued

U.S. Patent Nos. 7,303,992 ("the '992 patent") and 7,815,786 ("the '786 patent"), respectively, which are entitled "Copper Electrodeposition in Microelectronics." *Id.* at ¶¶ 6, 8. Enthone currently owns both patents. *Id.* at ¶¶ 7, 9.

Copper can be deposited by electrolytic plating to fill the interconnect features on substrates. Compl. at ¶ 13. Some electrolytic copper plating systems rely on "superfilling" or "bottom-up growth" to deposit copper into the interconnect features. *Id.* at ¶ 14. Superfilling involves filling a feature from the bottom up, rather than at an equal rate on all of its surfaces, to avoid seams and pinching off that can result in voiding. *Id.* at ¶ 15. As electronics have decreased in size, the smaller device sizes and increased circuit density require decreasing the dimensions of interconnect features. *Id.* at ¶ 16. Inventors at Enthone discovered that certain suppressor agents comprising polyether groups bonded to nitrogen-containing species achieve superior fill speeds and polarization. *Id.* at ¶ 17. The discoveries of Enthone's inventors, including electrolytic copper plating compositions with suppressor agents having polyether groups bonded to a nitrogen-containing species and related electroplating methods, are disclosed and claimed in the '992 and '786 patents. *Id.* at ¶ 18.

According to Enthone's complaint, BASF is a competitor of Enthone and is also active in the manufacture and sale of chemicals used in the electrolytic plating of copper onto semiconductor substrates. *Id.* at ¶ 19. Enthone alleges that BASF has made, used, sold, or offered for sale compositions for electrolytic copper plating solutions, which—when prepared according to BASF's instructions—contain a source of copper ions sufficient for electrolytic plating of copper onto a semiconductor substrate and a specific suppressor with a polyether

group bonded to a nitrogen-containing species having the specific attributes described and claimed in Enthone's '992 and '786 patents ("Electrolytic Copper Plating Products"). *Id.* at ¶ 20. Based at least on BASF's pre-suit correspondence, BASF's website and online brochures, and BASF's own published patent applications, Enthone believes that this allegation will have additional evidentiary support after a reasonable opportunity for discovery. *Id.* Enthone further alleges that copper plating solutions made with one or more of BASF's CUPUR® series products contain a source of copper ions sufficient for electrolytic plating of copper onto a semiconductor substrate and a specific suppressor with a polyether group bonded to a nitrogen-containing species having the specific attributes described and claimed in Enthone's '992 and '786 patents. *Id.* at ¶ 21. In addition, Enthone alleges upon information and belief that BASF sells and distributes its Electrolytic Copper Plating Products to customers in the United States, including shipping, offering to sell, and selling its Electrolytic Copper Plating Products into the Northern District of New York, and induces the infringing use of its Electrolytic Copper Plating Products in the Northern District of New York. *Id.* at ¶ 22.

In a letter dated June 30, 2014, Enthone informed BASF of the '992 and '786 patents and requested BASF to either "verify or disprove" Enthone's belief that BASF was infringing these patents. *Id.* at ¶ 23. In the June 30, 2014 letter, Enthone also offered to protect the confidentiality of any information provided by BASF. *Id.* at ¶ 24. On August 14, 2014, an attorney for BASF responded to Enthone's letter requesting more information before BASF could respond to Enthone's June 30 letter. *Id.* at ¶ 25. On August 20, 2014, Enthone responded to BASF's attorney by indicating that Enthone believed BASF's copper

electroplating suppressor products that contained a polyether compound which comprises a combination of propylene oxide (PO) repeat units and ethylene oxide (EO) repeat units bonded to a nitrogen-containing species infringed the '992 and '786 patents.  *Id.* at ¶ 26. Specifically, Enthone identified BASF's CUPUR® product line.  *Id.*  In an email dated September 12, 2014, BASF's attorney requested additional time to respond to Enthone's letter.  Id. at ¶ 27.

After not hearing from BASF for several weeks, Enthone sent a follow up email on September 29, 2014.  *Id.*  BASF's attorney replied that it would respond to Enthone's letter by October 3, 2014.  *Id.*  On October 7, 2014, BASF's attorney again wrote Enthone, stating that he had not had a chance to meet with his client and that he would do so by October 8, 2014.  *Id.* at ¶ 28.  Enthone still had not heard from BASF on January 21, 2015, so Enthone sent another email to BASF's counsel.  *Id.* at ¶ 29.  In its email of January 21, 2015, Enthone requested a response from BASF by January 28, 2015.  *Id.*  BASF's counsel responded on January 28, 2015, and denied that BASF infringes any "valid claim" of the '786 or '992 patents. *Id.* at ¶ 30.  Enthone sent BASF a response on January 30, 2015.  *Id.* at ¶ 31.  BASF has not further responded and Enthone has been unable to establish any further communication with BASF.  *Id.* at ¶ 32.

Enthone's '992 patent details "[a] method for electroplating a copper deposit onto a semiconductor integrated circuit device substrate with electrical interconnect features including submicron-sized features."  Dkt. No. 1 Exhibit A.  Count 1 of Enthone's Complaint alleges that BASF directly infringed Enthone's '992 patent and that BASF indirectly infringed the '992 patent by inducing infringement and contributing to the infringement of the patent.

Compl. at ¶¶ 35, 37, 42, 43.

Enthone's '786 patent details "[a]n electrolytic plating composition for electrolytically plating [copper] onto a semiconductor integrated circuit substrate having a planar plating surface and submicron-sized interconnect features by immersion of the semiconductor integrated circuit substrate into the electrolytic solution." Dkt. No. 1 Exhibit B. Count 2 of Enthone's Complaint alleges that BASF directly infringed Enthone's '786 patent and that BASF indirectly infringed the '786 patent by inducing infringement and contributing to the infringement of the patent. Compl. at ¶¶ 48, 50, 55, 56.

Enthone alleges that BASF directly and indirectly infringed Enthone's '992 and '786 patents and commenced this action on February 27, 2015. *See* Compl. generally. BASF filed a partial motion to dismiss on May 4, 2015. Dkt. No. 15. In response, Enthone filed a memorandum in opposition to BASF's partial motion to dismiss on May 21, 2015. Dkt. No. 17. BASF filed a reply brief on May 28, 2015. Dkt. No. 19.

### III. STANDARD OF REVIEW

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). On a motion to dismiss, the Court must accept "all factual allegations in the complaint as true, and draw[] all reasonable inferences in the plaintiff's favor." *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (internal quotation marks omitted). This tenet does not apply to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (quoting *Bell Atl.*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* While Rule 8(a) (2) "does not require detailed factual allegations, ... it demands more than an unadorned, the-defendant-harmed-me-accusation." *Id.* (citation and internal quotation marks omitted). A claim will only have "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint which "tenders 'naked assertion[s]' devoid of 'further factual enhancement'" is insufficient. *Id.* (citation omitted).

**IV.    DISCUSSION**

"In addition to direct infringement, the patent statutes also create liability for so-called indirect infringement, which generally falls into two categories: induced and contributory infringement[,]" both of which are alleged here. *Medgraph, Inc., v. Medtronic, Inc.*, 2015 WL 3938253 (W.D.N.Y. June 29, 2015). BASF argues that Enthone's "allegations are mere legal conclusions plead[ed] 'upon information and belief' that do not 'allow[] the court to draw the reasonable inference that [BASF] is liable for the misconduct alleged[,]'" and therefore the indirect infringement claims must be dismissed pursuant to Fed. R. Civ. P. 12(b)(6). Dkt. No. 15 at 3.

    **a. Induced Infringement**

Under 35 U.S.C. § 271(b), a party is liable for induced infringement if it "actively induces infringement of a patent." 35 U.S.C. § 271(b). To state a claim for induced infringement, Enthone must plead facts showing: (1) there was direct infringement, (2) that BASF knowingly induced infringement, and (3) that BASF possessed specific intent to

encourage another's infringement. *Toshiba Corp. v. Imation Corp.*, 681 F.3d 1358, 1363 (Fed. Cir. 2012) (internal citations omitted). BASF moves to dismiss Enthone's induced infringement claim, arguing that the allegations in the complaint are insufficient; specifically, Enthone fails sufficiently to plead that BASF acted with specific intent to induce infringement. Dkt. No. 15.; *see DSU Med. Corp. v. JMS Co.*, 471 F.3d 1293, 1305 (Fed. Cir. 2006) (in order to be successful in an induced infringement claim under 35 U.S.C.S. § 271(b), the defendant must have acted with specific intent to induce the infringement). Specific intent may be shown by establishing (1) that the defendant "intended to cause the acts that constitute the direct infringement," and, (2) the defendant "kn[ew] or should have known [that] its action would cause the direct infringement[.]" *Broadcom Corp. v. Qualcomm Inc.*, 543 F.3d 683, 699 (Fed. Cir. 2008) (citing *DSU Med. Corp.*, 471 F.3d at 1305). Further, specific intent "may be established through circumstantial evidence" and "may be inferred from all of the circumstances." *Broadcom Corp.*, 543 F.3d at 699 (quoting *Water Techs. Corp. v. Calco*, 850 F.2d 660, 669) (Fed. Cir. 1988) (internal quotation marks omitted).

BASF cites *Dynacore Holdings Corp. v. U.S. Philips Corp.* for the proposition that the "sale of a lawful product by lawful means, with the knowledge that an unaffiliated, third party may infringe, cannot, in and of itself, constitute infringement." Dkt. No. 19; 363 F.3d 1263, 1276 n.6 (Fed. Cir. 2004). This rule has no bearing on the current case because Enthone has alleged that BASF did more than sell a product with knowledge of possible infringement. Compl. at ¶¶ 20, 37, 50. Enthone alleges that BASF facilitated and supported their customers' infringing uses, and that BASF provided instructions that led to infringement. *Id.*

BASF also cites *Takeda Pharms. U.S.A., Inc. v. West-Ward Pharm. Corp.* to support its

position that Enthone did not adequately allege that the instructions provided by BASF were specific enough to constitute evidence of specific intent. 785 F.3d 625, 631 (Fed. Cir. May 6, 2015) ("whether the instructions teach an infringing use of the device such that we are willing to infer from those instructions an affirmative intent to infringe the patent.") (citing *Warner-Lambert Co. v. Apotex Corp.*, 316 F.3d 1348, 1363 (Fed. Cir. 2003)); Dkt. No. 19 at 2. BASF argues that Enthone's failure to identify the instructions or the content of the instructions renders that allegation insufficient. Dkt. No. 19 at 2.

BASF might be correct if this were the only allegation made by Enthone that applied to specific intent. However, Enthone includes allegations of BASF's knowledge of infringement, BASF's facilitation and support of infringement, and instructions provided by BASF to its customers that cause BASF's products to have the "specific attributes described and claimed in [the patents-in-suit]." Compl. at ¶¶ 20, 22, 23, 26, 36-38, 49-51. These allegations, when taken as a whole, support a reasonable inference that BASF had the specific intent to induce the infringement. *Twombly*, 550 U.S. at 570; *see* Compl. generally.

BASF further cites *Novartis Pharms., Corp. v. Wockhardt USA LLC*, in which the court dismissed an induced infringement claim, to support its motion. No. 12-cv-3967 (SDW), 2013 U.S. Dist. LEXIS 152141, at *29 (D.N.J. October 23, 2013). In that case, the "Plaintiffs fail[ed] to identify any explicit direction or instruction by [] Defendants that would lead to active infringement under § 271(b)." The court, however, did not dismiss the plaintiff's claim for failure to identify and describe in detail the content of instructions. *Novartis Pharms., Corp.* 2013 U.S. Dist. LEXIS 152141, at *29-30. The court instead dismissed the plaintiff's induced infringement claim because they failed to provide any evidence—including instructions by

defendant regarding an infringing use—that would be sufficient to show that the defendants took "affirmative steps to foster infringement," and therefore plaintiffs failed adequately to allege specific intent. *Id.* This case is inapposite because Enthone has alleged that there were instructions provided by BASF regarding an infringing use of BASF's products along with several other facts that lead to a plausible inference that BASF took "affirmative steps to foster infringement." Compl. at ¶¶ 20, 22, 23, 26, 36-38, 49-51; *Novartis Pharms., Corp.* 2013 U.S. Dist. LEXIS 152141, at *29-30.

Enthone's allegations include that BASF knew of the patents as evidenced by the correspondence between Enthone and BASF, and BASF's listing of the patents-in-suit in their own patent applications. Compl. at ¶¶ 23-32, 36, 49. Further, Enthone alleges that BASF, with knowledge that its products infringed the patents-in-suit, manufactured, sold, and supplied the infringing products to customers and further facilitated and supported the customers' infringing use. *Id.* at ¶¶ 37, 50. Enthone also alleges that BASF provides instructions with their products that cause the prepared compositions to have the "specific attributes described and claimed in [the patents-in-suit]." *Id.* at ¶ 20. Finally, Enthone alleges that BASF "possessed specific intent to induce direct infringement of [the patents-in-suit]." *Id.* at ¶¶ 38, 51.

Taking the factual allegations as true and drawing all reasonable inferences in favor of the non-movant, there are sufficient factual allegations in the complaint for the induced infringement claim to survive the motion to dismiss. *Holmes v. Grubman*, 568 F.3d 329, 335 (2d Cir. 2009) (internal quotation marks omitted). Although some of Enthone's allegations are conclusory, there are sufficient factual allegations, when taken as a whole, to create a

plausible inference that BASF had specific intent to induce the infringement.  *See* Compl. at ¶¶ 20, 22, 23, 26, 36-38, 49-51; *Holmes,* 568 F.3d at 335.

    **b.  Contributory Infringement**

BASF also moves to dismiss Enthone's contributory infringement claim, arguing that the allegations in the complaint are insufficient.  Dkt. No. 15.  Under 35 U.S.C. § 271(c), a party is liable for contributory infringement if it "offers to sell or sells within the United States or imports into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use."  35 U.S.C. § 271(c).  Therefore, Enthone must plead facts showing: (1) that there is a direct infringement, (2) that BASF had knowledge of the patent, (3) that BASF's infringing component has no substantial non-infringing uses, and (4) that BASF's infringing component is a material part of the invention. *Fujitsu Ltd. v. Netgear Inc.*, 620 F.3d 1321, 1326 (Fed. Cir. 2010).  Because BASF only argues that Enthone failed to adequately plead the third and fourth elements of contributory infringement, the first two elements will not be addressed.  Dkt. No. 15.

    **1.  The Infringing Component Has No Substantial Non-Infringing Uses**

BASF moves to dismiss Enthone's contributory infringement claim, contending that the allegations in the claim are insufficient, specifically that the infringing component has no substantial non-infringing uses.  Dkt. No. 15.  In *In re Bill of Lading Transmission and Processing System Patent Litigation*, the United States Court of Appeals for the Federal

Circuit stated that "[t]o state a claim for contributory infringement [ ] a plaintiff must, among other things, plead facts that allow an inference that the components sold or offered for sale have no substantial non-infringing uses." 681 F.3d 1323, 1337 (Fed. Cir. 2012). The court in *In re Bill of Lading*, however, did not dismiss the case due to insufficient factual allegations that the infringing component had no substantial non-infringing uses. Rather, the court dismissed the case because the complaint contained factual allegations showing that the infringing component **had** substantial non-infringing uses and therefore that element was insufficiently pleaded. 681 F.3d at 1337.

BASF contends that Enthone fails to plead sufficient facts to establish that BASF's product has no substantial non-infringing uses. Dkt. No. 15. BASF compares Enthone's complaint to that of *3D Sys. v. Formlabs, Inc.*, where the court held that "a barebones recitation that the [product] was 'especially made or especially adapted' for an infringing use and that it ha[d] 'no substantial noninfringing uses' … is a mere 'formulaic recitation of the elements of [a] cause of action' that cannot survive a motion to dismiss." No. 13-cv-7973, 2014 U.S. Dist. LEXIS 65127, at *18 (internal citations omitted); Dkt. No. 15. The court in *3D Sys. v. Formlabs, Inc.* held that the plaintiff failed to sufficiently plead that the infringing product had no substantial non-infringing use because "no facts or allegations are pled that plausibly support an inference that there are no substantial noninfringing uses of the [product] especially since the Complaint does not provide any allegations as to how the [product] infringes the patents-in-suit." 2014 U.S. Dist. LEXIS 65127, at *18-19. This does not apply to the current case because Enthone's Complaint alleges not only that there are no substantial non-infringing uses, but it also describes in detail which of BASF's products

infringe and how they infringe the patents-in-suit.  Compl. at ¶¶ 20-22, 40, 53.

In *Conair Corp. v. Jarden Corp.*, the United States District Court for the Southern District of New York, in reviewing the sufficiency of an indirect infringement complaint, noted the "difficulty of alleging enough facts to demonstrate a negative at this stage."  No. 13-cv-6702 (AJN), 2014 U.S. Dist. LEXIS 112252, at *12 (S.D.N.Y. Aug. 12, 2014).  The court further noted that this difficulty has led to "numerous post-*Iqbal* cases … not requir[ing] detailed factual allegations in support of a plaintiff's claim that a defendant's product lacks substantial non-infringing uses."  *Id.*  The court held that the plaintiff's allegation that "[defendant's] products 'are not suitable for substantial non-infringing use[,]'" combined with a failure of plaintiff to allege "facts that would tend to undermine its assertion that [defendant's] products lack substantial noninfringing uses," was sufficient to survive a 12(b)(6) motion to dismiss.  *Id.* at 12-13.

Enthone's Complaint does not suffer from the deficiencies of the complaint in *In re Bill of Lading*, which contained facts demonstrating there was a substantial non-infringing use, or the complaint in *3D Syst. Inc.*, which failed to identify how, or to what extent, the allegedly infringing product infringed the patents-in-suit.  681 F.3d at 1337; 2014 U.S. Dist. LEXIS 65127, at *18-19.  Enthone's Complaint does not contain contradictory facts that identify a substantial non-infringing use for BASF's Electrolytic Copper Plating Products, and Enthone's complaint describes how BASF's products infringe the patents-in-suit.  Compl. at ¶¶ 20-22.

While *Iqbal* and *Twombly* require a certain level of specificity in a complaint's allegations, this Court notes the difficulty in alleging sufficient facts to "demonstrate a negative at this stage." *Conair Corp.*, 2014 U.S. Dist. LEXIS 112252, at *12.  Enthone's allegation that

"[u]pon information and belief, BASF's Electrolytic Copper Plating Products are not staple articles or commodities of commerce suitable for substantial non-infringing use[,]" combined with detailed descriptions of the patents and the infringing products, renders the complaint sufficient to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). Compl. at ¶¶ 14-18, 20-22, 40, 53.

### 2. The Infringing Component Is A Material Part Of The Invention

BASF also argues that Enthone's contributory infringement claim must be dismissed because it fails to allege that the infringing component is a material part of the invention. Dkt. Nos. 15, 19. In order to establish contributory infringement under 35 U.S.C. § 271(c), Enthone must allege that BASF's product is a "material part of the invention" that is the subject of the patents-in-suit. *Fujitsu, Ltd.,* 620 F.3d at 1326.

BASF argues that Enthone fails to plead any facts to establish that BASF's alleged infringing product is a material part of the invention. Dkt. Nos. 15, 19. BASF argues that Enthone's allegations are nothing more than a " formulaic recitation of the elements of a cause of action" and Enthone has not adequately alleged the materiality of the infringing product. Dkt. No. 15 at 7; *Twombly*, 550 U.S. at 555. BASF also cites *Gradient Enters. v. Skype Techs. S.A.*, where the court found the plaintiff failed to provide any factual allegations of the elements of contributory infringement and dismissed as "inadequate" allegations that "merely provide[d] threadbare recitals of the elements of a cause of action." 848 F. Supp. 2d 404, 409 (W.D.N.Y. 2012) (internal quotation omitted).

Enthone argues that the Complaint contains a "detailed recitation of how and why the specific suppressor in BASF's accused products infringes the Patents-In-Suit." Dkt. No. 17

at 9. Enthone further contends that the Complaint alleges sufficient facts to establish that "[w]ithout the claimed suppressor, BASF's [infringing] [p]roducts would not be able to achieve the superior fill speed necessary to 'superfill' the submicron sized interconnect features." *Id.* Enthone cites paragraphs 17- 21, 26, 41, 42, 54, and 55 of the Complaint to support this contention. Dkt. No. 17 at 9. As paragraphs 17-21, and 26 of the cited paragraphs are discussed in Section II, supra, the Court will lay out the remaining paragraphs (41, 42, 54, and 55) below:

> ¶ 41: Upon information and belief, BASF's Electrolytic Copper Plating Products constitute a material part of the invention claimed in the '992 patent.
>
> ¶ 42: Upon information and belief, BASF has contributed to infringement of the '992 patent by selling, offering to sell, and/or inducing the use of the Electrolytic Copper Plating Products within the United States knowing that these products were especially made or adapted for use in a process that infringes at least claim 1 of the '992 patent.
>
> ¶ 54: Upon information and belief, BASF's Electrolytic Copper Plating Products constitute a material part of the invention claimed in the '786 patent.
>
> ¶ 55: Upon information and belief, BASF has contributed to infringement of the '786 patent by selling, offering to sell, and/or inducing the use of the Electrolytic Copper Plating Products within the United States knowing that these products were especially made or adapted for use in a composition that infringes at least claim 1 of the '786 patent.

BASF argues that the paragraphs cited by Enthone do not support their contention that "[w]ithout the claimed suppressor, BASF's [infringing] [p]roducts would not be able to achieve the superior fill speed necessary to 'superfill' the submicron sized interconnect features []" and argues further that this fact is not alleged, but rather is "mere attorney argument lacking support in the Complaint." Dkt. No. 19.

BASF is correct on this point. While the cited paragraphs describe the process by

which the specific suppressor functions, Enthone fails to allege that the specific suppressor is necessary to fulfill the patented process of "superfilling." Enthone describes the process of "superfilling" or "bottom-up growth" and its use in depositing copper into interconnect features. Compl. at ¶¶ 12-17. Enthone also alleges that certain suppressor agents "achieve superior fill speeds and polarization." *Id.* at ¶ 17. However, Enthone fails to allege, although they include it in their Memorandum in Opposition to Defendant's Partial Motion to Dismiss, that the process of "superfilling" or "bottom-up growth" cannot be achieved absent these suppressor agents. Dkt. No. 17 at 9. Enthone alleges that the specific suppressor agents "achieve superior fill speeds and polarization," however, the complaint contains no allegations that superior fill speeds are necessary to achieve "superfilling" or "bottom-up growth." Compl. at ¶ 17. Absent some allegation to establish that "superfilling" cannot be accomplished absent the specific suppressor agent, Plaintiff has not adequately pleaded that BASF's infringing product constitutes a material part of the invention and therefore the complaint is insufficient to survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6).

**V.    CONCLUSION**

For the reasons set forth above, Defendant's motion to dismiss [Dkt. No. 15] is **GRANTED in part, and DENIED in part.**

The motion is **GRANTED** in that Enthone's contributory infringement claims are dismissed. The dismissals are without prejudice to re-pleading. Plaintiffs are granted leave of thirty (30) days from the date of this Decision and Order to re-plead.

The motion is **DENIED** in all other respects.

**IT IS SO ORDERED.**

Dated:  August 27, 2015

_Thomas J. McAvoy_
Hon. Thomas J. McAvoy, SUSDJ